Argued February 17, modified March 23, 1926.

In the Matter of the Adjudication of the WATER RIGHTS OF ROGUE RIVER.

E. J. CAMERON *v.* MAGGIE BUCKLEY et al.

(244 Pac. 662.)

**Waters and Watercourses—Owners, Claiming Under Common Grantor Incorporated in 1858, are not Entitled to Priority as of 1854, as Against One Claiming Under Grantor Who Settled on Lands in 1850 and Irrigated in That Year (Sp. Laws of 1857–58, pp. 55–57; Donation Land Act of 1850 [9 Stat. 496]).**

1. Owners claiming under common grantor incorporated in 1858, under Special Laws of 1857–58, pages 55–57, and thereafter making appropriation of waters and constructing ditch, are not entitled to a priority as of the year 1854, as against one claiming through grantor who settled on lands under Donation Land Act of 1850, and irrigated in that year.

**Waters and Watercourses.**

2. Priority in time of appropriation of water for irrigation creates priority in rights.

**Waters and Watercourses—Appropriation of One Claiming Under Grantor, Who Settled in 1850 and Irrigated, Held Prior in Time and Right to Those Claiming Under Common Grantor Who Irrigated in 1858, Notwithstanding Later Use of Common Ditch (Donation Land Act of 1850 [9 Stat. 456]).**

3. Appropriation of one claiming through grantor, who settled under Donation Land Act of 1850 and irrigated in that year, *held* prior in time and right to that of persons claiming through common grantor incorporated in 1858, and appropriating waters during such year, notwithstanding common ditch had been later constructed for use of all parties.

**Waters and Watercourses.**

4. Water for proper irrigation of lands and other use will be allowed in Supreme Court, where lower court allowed insufficient amount.

Waters, 40 Cyc., p. 734, n. 32.

From Jackson.   F. M. Calkins, Judge.

Department 1.

Modified.

Rights of prior appropriators of waters, see note in 30 L. R. A. 665. See, also, 27 R. C. L. 1269.

For appellant there was a brief over the names of *Messrs. Reames & Reames* and *Mr. E. E. Kelly,* with an oral argument by *Mr. A. E. Reames.*

For respondents there was a brief and oral argument by *Mr. Gus Newbury.*

RAND, J.—The appellant, Mrs. E. J. Cameron, is the owner of a farm in Jackson County, which is irrigated by the waters of Little Applegate River, by means of a ditch taken out of that stream. The respondents each own farms that are irrigated from the same stream, and although the appropriation made by their common grantor was made at a different time, and through a different ditch than that made by appellant's grantor, the appellant and all of the respondents now use the same ditch for the irrigation of their respective premises.

The decree from which this appeal is taken adjudicated the relative rights of all of the various claimants to the use of the waters of Rogue River above a certain point, and all of its tributaries flowing into Rogue River above that point. Little Applegate River is one of the streams thus adjudicated, and flows into Big Applegate, and thence into Rogue River. This appeal is from that part of the decree which affects the rights of the appellant and respondents to the use of the waters of Little Applegate River for the irrigation of their respective premises. Under this decree, appellant's right is limited to the use of water upon only 89 acres of her land, and the quantity which she is permitted to use is limited to 2.23 second-feet, and respondents are given a priority as of the year 1854, the same as that awarded to appellant. Appellant contends that under the evidence she was entitled

to a decree permitting her to irrigate 105 acres of her land; that the amount awarded is wholly insufficient for the irrigation of the lands under irrigation upon her premises, and that respondents are not entitled to as early a priority as that awarded to them.

The testimony discloses that in the year 1854, one Gideon B. Davidson, appellant's grantor, settled upon the lands now owned by appellant, claiming them under the Donation Land Act of 1850, and that in that year he had a garden upon said premises, comprising some six or seven acres of land, upon which he raised vegetables, and which was irrigated by the waters of Little Applegate, by means of a dam in said stream, and a ditch leading to his premises, and that the waters of said stream have been used upon said premises every year since that time, for irrigation, domestic and stock purposes. This ditch is referred to in the evidence as the "Davidson Ditch." It also appears from the evidence that at that time a large number of placer miners were engaged in placer mining, in close proximity to said premises, and that these vegetables were raised for sale to said miners.

1, 2. The Applegate Mining, Milling and Irrigating Water Ditch Company, the common grantor of the respondents, was incorporated by a special act of the legislature of the then territory of Oregon, in January, 1858. (See Laws of Oregon, 1857–58, pp. 55–57.) The charter recites that this company was incorporated "for the purpose of bringing the water of the left hand, or North fork of Applegate Creek" (which stream is now known as Little Applegate River), "from a point, at or near the mouth of Sterling Creek, down said Applegate

Creek as high as may be practicable, to a distance not less than five miles, and as much further as may (be) deemed expedient, with milling and manufacturing privileges,'' and expressly authorized said company ''to have and to receive and purchase, water power, lands, goods, effects and chattels of any kind, to an amount necessary to carry into effect the objects of said corporation, * * and the same to use and dispose of at pleasure.'' It also appears that said company made an appropriation of the waters of Little Applegate River, and constructed a ditch, diverting the waters of said stream in compliance with the conditions of its charter, and that respondents, by mesne conveyances, are now the owners of said appropriation, and that the waters so appropriated have been for many years actually used for irrigation purposes upon their premises. It thus appears from the testimony that appellant's appropriation was actually made in 1854, and that respondents' appropriation was not made until after that year. Hence, the court was in error in awarding to respondents a priority as of the year 1854, and since priority in time of appropriation creates a priority in right, the decree in that respect is erroneous.

3. The testimony discloses that the ditch constructed by said company diverted water from Little Applegate River, at a point above the head of the Davidson Ditch; that the two ditches until reaching a point above and opposite to appellant's premises were parallel ditches; that they were not parts of one and the same ditch; that at a later date the ground over which these two ditches had been constructed was worked by third parties, as a placer mine; that the work had the effect of destroying the

carrying capacity of both of said ditches; that a new ditch, known as the "farmer's ditch" was then constructed, for the joint use of appellant and respondents; that both appellant's and respondents' water was turned into said ditch, and conveyed in common until reaching a lateral leading on to appellant's premises; that since said time appellant and respondents have used said ditch in common and have maintained the same at their joint expense, one half the cost thereof being borne by appellant and the other one half by respondents, and that upon reaching appellant's lateral, the water has been divided so as to permit appellant's portion thereof to flow down her lateral and on to her said premises. There is no testimony tending to show any conveyance by appellant or her grantors, or any relinquishment by them of appellant's prior right to the use of the waters appropriated from Little Applegate River, and hence there is nothing in the record to show that appellant's priority has not been fully preserved and maintained. Hence, we hold that the appellant's appropriation is prior in time and right to that of respondents.

It also appears from the testimony that the soil on appellant's premises consists largely of a mixed gravelly soil, underlaid with large boulders, requiring a greater head of water for its proper irrigation than other lands having a different soil, and that to make up for the water lost by sinking while being used in irrigating appellant's premises, appellant is entitled to an amount in excess of that awarded by the decree.

4. We conclude from the evidence that plaintiff requires three second-feet of water for the proper

117 Or.—31

irrigation of her lands, and for stock and domestic use. For these reasons, the decree of the lower court will be modified, so as to award to appellant the use of three second-feet for irrigation, domestic and stock purposes, and requiring her when not using that quantity of water for said purposes to permit the water not being used to flow down to respondents, and decreeing her said right to the use of said three second-feet of water to be prior in time and right to the rights of respondents, or either of them.

MODIFIED.

McBRIDE, C. J., and BURNETT and COSHOW, JJ., concur.